UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

RICKY LEE WEHMEYER,                              Civil No. 11-330 (MJD/AJB)

        Petitioner,

    v.                                          **REPORT AND RECOMMENDATION**

TOM ROY, Commissioner of Corrections,

        Respondent.

       Ricky Lee Wehmeyer, Minnesota Correctional Facility - Stillwater, 970 Pickett Street North, Bayport, Minnesota, 55003, Petitioner, pro se.

       Robert C. O'Connor, Jackson County Attorney, 405 Fourth Street, Jackson, Minnesota, 56143, for Respondent.

ARTHUR J. BOYLAN, Chief United States Magistrate Judge

       This matter is before the undersigned Magistrate Judge of the District Court on the petition of Ricky Lee Wehmeyer for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.)  Respondent has filed a response, (Docket Nos. 6-7), contending that the petition should be dismissed.  The case has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that Petitioner's habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

       In September 2006, a criminal complaint was filed against Petitioner in the state district court for Jackson County, Minnesota, charging him with two counts of second degree criminal sexual conduct.  One of the charges was dismissed.  In the remaining

count, which is at issue here, Petitioner was accused of violating Minn. Stat. § 609.343, subd. 1(a), by having sexual contact with a person who was under the age of thirteen, and more than 36 months younger than Petitioner.

The criminal complaint against Petitioner was based on allegations made by a six-year-old girl whose mother had been involved in an extra-marital affair with Petitioner. The girl, who is referred to in the record as "TR," told her mother that Petitioner had put his hand on her genital area, over her clothes. The incident allegedly occurred while TR was at the home of a babysitter named Kelly Hatfield.

Petitioner contends that he was never arraigned on the criminal charge against him, and he never appeared at any pre-trial hearings. Respondent does not dispute that assertion. However, Respondent contends that Petitioner was in prison for another unrelated criminal conviction when he was charged for assaulting TR, and he was fully informed about the criminal sexual conduct charges against him. Petitioner does not dispute that assertion.

A jury trial was conducted in March 2007, but the jury became deadlocked, and a mistrial was declared. A second jury trial was conducted in August 2007.

At the second trial, TR's mother testified that one day in April 2006, while she was outside with her children, TR said that she "had a secret." (Respondent's Appendix, ["RA"], Docket No. 7-9, p. 5.[1]) TR's mother then took TR into the house, and TR said that

---

[1] Respondent's answer to Petitioner's habeas corpus petition includes a collection of fourteen appendices, which are filed together as Docket No. 7. The Clerk's Office has assigned each appendix an individual document identifier. Thus, for example, Respondent's Appendix 9 is identified as Docket No. 7-9 in the Clerk's record. In addition, each individual appendix has been separately paginated by the Clerk's Office. Thus, "RA 7-9, p. 5" refers to page 5 (as paginated by the Clerk's Office) of Respondent's Appendix

Petitioner "touched my privates." (Id.)  According to TR's mother, this accusation was made "out of the blue." (Id.)  Shortly thereafter, TR's mother left the house and went to look for a police officer, so she could report what her daughter had told her. (Id., p. 7.)  She was unable to locate a police officer that night, but she or her husband called and left a message at the local police department. (Id., p. 8.)

The following day, TR's mother talked to a police officer named Trevor Anderson. He suggested that TR's mother should contact the local child protection services. (Id., p. 9.)  TR's mother followed that suggestion, and soon thereafter TR was interviewed by a social worker named Roslyn Luers. (Id.)  That interview was video-recorded, and the recording was played for the jury at Petitioner's second trial.

During the interview, Luers asked TR several questions pertaining to the allegations against Petitioner.  TR told Luers that Petitioner had touched her bottom and her "private" while she was at Kelly Hatfield's house. (RA 7-10, pp. 27-29.)  TR said the touching occurred while Petitioner was sitting on a couch by a computer, and TR was standing next to him. (Id., p. 29.)  TR said that she had her clothes on, and Petitioner touched her over her clothes. (Id., pp. 29-31.)  TR told Luers that the touching occurred the previous year, when she was five years old. (Id., p. 36.)  Near the end of the interview, TR added that Petitioner "wanted to touch me." (Id., p. 40.)

---

9.  Citing 28 U.S.C. § 2254(f), Respondent has not filed a copy of the complete trial transcript, but rather, Respondent has filed only excerpts from the transcript that are deemed relevant to Petitioner's current claims. (See Respondent's Memorandum, [Docket No. 6-1], p. 2.)  Petitioner has not suggested that Respondent's submissions are inadequate or incomplete in any respect.  Indeed, Petitioner has not filed any reply to Respondent's submissions, despite being invited to do so. (See Order dated February 23, 2011; [Docket No. 5].)

TR also testified in person at Petitioner's trial.  She identified Petitioner, and said that she knew why she was in court.  (RA 7-9, p. 53.)  TR testified about an incident that occurred in the living room at Hatfield's home at some unspecified time in the past.  She said that while she was in the living room, Petitioner touched her.  (Id., p. 54.)  She also said that both of her parents, and Hatfield, were in the living room when the touching occurred.  (Id.)  TR testified that the touching occurred while Petitioner was sitting on a chair in front of a computer, and she was standing next to him.  (Id., p. 55.)  She said that Petitioner touched her between her legs on "the private," and on her bottom, over her clothes.  (Id., pp. 56-57; p. 63.)  TR said the touching made her feel "bad," and she "didn't like it."  (Id., pp. 57-58, p. 63.)

Police Officer Trevor Anderson also testified at Petitioner's trial.  He testified that in April 2006 he received a "possible child protection report" involving TR.  (RA 7-13, p. 20.)  Anderson called Roslyn Luers, (the social worker), and made arrangements for her to interview TR at the police department.  (Id., p. 21.)  Anderson later reviewed the recording of Luers' interview with TR, and used it to prepare a report.  (Id., p. 22.)  He then turned the recording over to the County Attorney.  (Id.)

Anderson also attempted to determine when Petitioner might have touched TR at Hatfield's home.  Based on an interview with TR's mother, he determined that the incident probably occurred sometime in September or October of 2005, because Hatfield had been babysitting TR quite a bit during those months.  (Id., pp. 23-24.)

During Anderson's cross-examination he was asked whether he had ever interviewed Kelly Hatfield.  (Id., p. 25.)  Anderson said that he did interview Hatfield, but he could not remember whether he talked to her about TR's accusations against Petitioner.

4

(Id., p. 26.)  Anderson thought he had interviewed Hatfield about a different matter. Petitioner's attorney asked Anderson whether his file on that other matter might include any information relevant to TR's accusations against Petitioner.  Anderson said he did not think any such information could have been "misfiled," but he agreed to return to his office to check his files.  (Id., p. 27, 29.)

Later during the trial, Anderson informed the parties and the trial court judge that he had located a transcript of an interview with Kelly Hatfield.  The interview pertained to TR's accusations against Petitioner, but it had been erroneously placed in a file for a different matter.  The record consistently shows that both the prosecutor and the defense were surprised to learn about Anderson's interview with Hatfield.  Nothing in the record suggests that either the County Attorney or defense counsel was aware of the Anderson-Hatfield interview until it was disclosed during the course of Petitioner's second jury trial. Petitioner's attorney had an opportunity to review a transcript of the Anderson-Hatfield interview while the trial was still ongoing, and he did not raise any objection to the late disclosure of the interview.  (The transcript is included in the present record in at least two places.  The Court will refer to the copy of the transcript identified as RA 7-4, pp. 92-96.)

The transcript of the interview shows that Hatfield was aware of TR's accusations against Petitioner.  Hatfield assumed that the accusations were based on an incident that had occurred in her home one day in August or September of 2005, when she was babysitting TR and her younger brother, and Petitioner was present.  (RA 7-4, p. 92.) According to Hatfield, Petitioner was never alone with TR that day.  (Id.)  Hatfield told Anderson that she saw TR crawl onto Petitioner's lap while he was playing solitaire on the computer.  (Id., p. 93.)  Hatfield said that Petitioner was holding onto TR "to steady her or

5

balance her" and "his hand was on her knee."  (Id.)

During the interview, Hatfield speculated that "it happened " – apparently referring to TR's accusation against Petitioner – but not at her house.  (Id., p. 94.)  She thought "it could have happened" sometime while Petitioner was visiting TR's mother – presumably during their affair, but perhaps at some earlier time.  (Id.)  Hatfield also told Anderson that she did not think she could provide any testimony that would support TR's accusation against Petitioner, i.e., that the touching incident occurred at Hatfield's home.  However, Hatfield also told Anderson that she wanted "nothing more" than to have Petitioner "be locked up and throw away the key."  (Id.)

After Petitioner's attorney learned about the Anderson-Hatfield interview, he spoke briefly to Hatfield.  Petitioner's attorney had already subpoenaed Hatfield, in case he needed to elicit testimony from her regarding the layout and furnishings of her home. However, after reviewing the Anderson-Hatfield interview, and talking briefly with Hatfield, Petitioner's attorney decided not to call Hatfield as a witness at Petitioner's trial.

The jury at Petitioner's second trial, (unlike the jury at the first trial), was allowed to consider evidence showing that Petitioner had been previously convicted for criminal sexual conduct in a 1995 case.  In that earlier case, Petitioner was accused of exposing himself to a ten-year-old girl, and having her touch his penis.

At the conclusion of Petitioner's second trial, the jury found him guilty of second degree criminal sexual conduct.  Based on Petitioner's prior criminal record, and the jury's determination that he is "a danger to public safety," the trial court judge imposed a life sentence with a minimum term of 360 months.

After Petitioner was convicted and sentenced, he filed a direct appeal. He later asked to have the appeal stayed while he pursued a post-conviction motion in the trial court. That request was granted, and Petitioner then filed a post-conviction motion, claiming that his conviction should be vacated because the Anderson-Hatfield interview was not disclosed to the defense before trial. The post-conviction motion was based on the disclosure of evidence requirements prescribed by Brady v. Maryland, 373 U.S. 83 (1963), and related Minnesota state court rules.

Petitioner was granted a hearing on his post-conviction motion, and he offered a declaration from his defense counsel in support of his motion. In the declaration, Petitioner's attorney stated the following:

> "4. I received a copy of the recorded statement [i.e., the Anderson-Hatfield interview] either after the adjournment after the first day of trial, or the following morning before the trial re-commenced. That statement was exculpatory. I believe I objected to the late disclosure, though my objection apparently does not appear in the trial transcripts.
>
> 5. At the time I was preparing for [Petitioner's] trial, Ms. Hatfield was facing charges for harboring a fugitive based upon allegations that [Petitioner] stayed in her home after absconding from probation supervision. During the time she was represented by counsel I could not speak with her about the case.
>
> 6. Ms. Hatfield was hostile to [Petitioner], and it was too risky to the defense to call her as a witness without investigating her statement and speaking to her about it and her potential testimony. I did not have time in the middle of trial to meaningfully speak with Ms. Hatfield. After quickly weighing the potential risks, I decided not to call Ms. Hatfield as a witness.
>
> 7. If I had received Ms. Hatfield's statement prior to trial, I would have investigated it thoroughly and I would have made more of an effort to speak with her about it and this case. I may have called her as a witness."

(RA 7-12, p. 21.)

The trial court judge found that Hatfield's statement to Anderson "contained information that could be construed as favorable to the prosecution or the defense." (RA 7-1, p. 54.)  The judge further found that the statement should have been disclosed to Petitioner's attorney, but "[t]he State inadvertently suppressed the statement."  (Id.) Ultimately, Petitioner's post-conviction motion was denied, because the trial court judge concluded that Petitioner had not been materially prejudiced by the belated disclosure of the Anderson-Hatfield interview.  The judge explained that –

> "[Petitioner's attorney] obtained a copy and a recording of the statement before he left the Courthouse after the first day of trial, had time to review the statement and listened to the recording.  He spoke briefly with Hatfield and with [Petitioner].   Presumably based on the tenor of his conversation with her, he did not call Hatfield as a witness or ask for a continuance.

> On this record experienced trial counsel chose not to risk [Petitioner's] defense by calling a hostile witness who might, or might not, testify consistent with her prior statement.   There is not a reasonable likelihood that the judgment of the jury was affected by the belated disclosure. [Petitioner] was not materially prejudiced by the state's disclosure delay."

(Id., p. 55.)

After Petitioner's post-conviction motion was denied, his appeal resumed. Petitioner's appellate counsel raised several challenges to Petitioner's conviction and sentence, and Petitioner filed a separate pro se memorandum that raised several additional claims.   The Minnesota Court of Appeals considered and rejected all of Petitioner's challenges to his conviction, but found that the trial court had committed a sentencing error. Therefore, Petitioner's conviction was affirmed, but the case was remanded for re-sentencing.  State v. Wehmeyer, No. A07-2345 (Minn.App. 2009), 2009 WL 4573685

(unpublished opinion).[2]  The Minnesota Supreme Court denied Petitioner's subsequent petition for further review on February 16, 2010.  Petitioner filed his current federal habeas corpus petition on February 9, 2011.

## II.  CLAIMS PRESENTED

Petitioner's habeas corpus petition presents three grounds for relief.  First, Petitioner contends that his conviction should be vacated because there was insufficient evidence to support the jury's verdict.  Second, Petitioner contends that his conviction should be vacated because of the prosecution's belated disclosure of the Anderson-Hatfield interview.  And third, Petitioner contends that his conviction should be vacated because no arraignment or other pre-trial hearings were conducted, and he was therefore deprived of his constitutional right to be present at such hearings.  (Petition, [Docket No. 1], pp. (5)-(6).)

Respondent acknowledges that Petitioner's first two grounds for relief, (insufficiency of the evidence, and failure to disclose exculpatory evidence), were properly raised and adjudicated at all levels of the state courts, and that those two claims can properly be considered on the merits here.  Respondent contends that those first two claims should be denied, because Petitioner has not satisfied the stringent requirements for obtaining habeas corpus relief for either of those claims.  Respondent further contends that Petitioner's third ground for relief, (i.e., his right to be present at pre-trial hearings), was procedurally defaulted, and cannot properly be considered on the merits here, because that claim was not properly preserved for appellate review in the state courts.  This Court

---

[2]  Respondent reports that on September 13, 2010, Petitioner was re-sentenced to life in prison with a possibility of parole after 300 months.  (Respondent's Memorandum, [Docket No. 6], p. 5.)  Petitioner is presently challenging only his conviction, not his sentence.

agrees with all of Respondent's contentions and will therefore recommend that the current habeas corpus petition be dismissed with prejudice.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act, ("AEDPA"), prescribes the standards that govern this Court's substantive review of Petitioner's habeas corpus claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts.  The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

<u>Id</u>. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

"A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record.  When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).  See also 28 U.S.C. § 2254(e)(1).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a state prisoner's constitutional claims.  Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts.  Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## IV. DISCUSSION

### A. Insufficiency Of The Evidence (Ground One)

Petitioner first claims that the evidence produced at his trial was not legally sufficient to support the jury's guilty verdict. He argues that the evidence was insufficient because (i) "[t]he trial testimony was very inconsistent and implausible," and (ii) "[t]here was not any evidence presented to show sexual intent." (Petition, [Docket No. 1], p. (5), § 12.A.)

When a state prisoner raises an "insufficiency of the evidence" claim, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). "This standard recognizes that it is the province of the fact-finder, not this [reviewing] court, 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Sera v. Norris, 400 F.3d 538, 543 (8th Cir.), cert. denied, 546 U.S. 915 (2005), quoting Jackson, 443 U.S. at 319.

The Minnesota Court of Appeals described the standard of review for Petitioner's insufficiency of the evidence claim as follows:

> "Review of a claim of insufficient evidence is 'limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged.' State v. Merrill, 274 N.W.2d 99, 111 (Minn.1978). This court cannot retry facts but must take the view of the evidence most favorable to the jury verdict and must assume that the jury believed the state's witnesses and disbelieved any contrary evidence. Id. If the jury could have reasonably found the defendant guilty, giving due regard to the presumption of innocence and the state's burden of proof beyond a reasonable doubt, the verdict will not be reversed. State v. Pierson, 530 N.W.2d 784, 787 (Minn.1995)."

Wehmeyer, 2009 WL 4573685 at *2.  Petitioner has not suggested that the State Court misstated or misunderstood the applicable standard of review for his insufficiency of the evidence claim in any way.

After setting forth the applicable standard of review, the State Court of Appeals explained the elements of the charged offense in Petitioner's case as follows:

> "The state had the burden of proving beyond a reasonable doubt that [Petitioner] engaged in 'sexual contact' with T.R. when she was under age 13 and [Petitioner] was more than 36 months older.  See Minn.Stat. § 609.343, subd. 1(a) (2004). 'Sexual contact' includes the touching by the actor of the complainant's intimate parts with sexual or aggressive intent. Minn.Stat. § 609.341, subd. 11(a) (2004). Intimate parts include 'the primary genital area, groin, inner thigh, buttocks, or breast of a human being.' Minn.Stat. § 609.341, subd. 5 (2004)."

Wehmeyer, 2009 WL 4573685 at *2.

Petitioner does not dispute the victim's age, nor does he deny that he was more than 36 months older than the victim.  However, he contends that, based on the evidence presented at his trial, no rational jury could conclude that he had "sexual contact" with TR with "sexual or aggressive intent."  As noted above, Petitioner argues that the evidence was too "inconsistent and implausible" to support a finding of sexual contact, and there was no evidence of sexual intent.

The Minnesota Court of Appeals acknowledged that TR had provided somewhat inconsistent explanations of what Petitioner allegedly did to her.  TR told her mother that Petitioner "put her on his lap and then touched her 'private'," but she later told a social worker that Petitioner "had touched her 'bottom' and 'private' while she was standing next to him."  Wehmeyer, 2009 WL 4573685 at *3.  However, as the Court of Appeals properly pointed out, "these types of inconsistencies often occur when witnesses try to reenact

13

events that occur in stressful situations," and "[a]lthough a victim's accounts of a sexual assault may be contradictory or inconsistent, the jury is entitled to believe the victim." Id. (citations omitted). In short, "[i]nconsistencies within the state's case will not require reversal of the jury's verdict." Id.

The State Court of Appeals also discussed the evidence showing that Petitioner had previously committed a sexual assault against a ten-year-old girl, by inducing her to touch his penis.  The Court noted that such evidence was "very useful to the state to show motive, intent, lack of mistake or accident, knowledge, preparation, or plan." Id. at *4 (emphasis added).  That evidence "helped show that the charge [against Petitioner] was not fabricated and that the sexual contact was intentional." Id. at *5 (emphasis added).

This Court's post-conviction review of Petitioner's insufficiency of the evidence claim is "extremely limited." Whitehead v. Domire, 340 F.3d 532, 536 (8th Cir. 2003).  The Supreme Court's decision in Jackson requires this Court to "[v]iew[ ] the evidence in the light most favorable to the prosecution and resolv[e] all conflicting inferences in the state's favor." Id. at 537.  In addition, AEDPA requires this Court to "presume that the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence." Evans v. Luebbers, 371 F.3d 438, 441 (8th Cir. 2004), cert. denied, 543 U.S. 1067 (2005), citing 28 U.S.C. § 2254(e)(1).

Although the evidence supporting Petitioner's conviction could not be described as overwhelming, this Court cannot conclude that Petitioner has satisfied the doubly difficult burden imposed by the Jackson standard of review combined with the AEDPA standard of review.  Based on the evidence presented at Petitioner's trial, a rational jury could have determined that Petitioner was guilty of sexual contact with TR with sexual intent.  As the

State Court of Appeals correctly pointed out, the victim repeatedly stated – to her mother, to the social worker, and directly to the jury – that Petitioner touched her genital area, groin, inner thigh or buttocks.   Thus, despite any "inconsistencies" in the details of TR's statements, a rational trier of fact could have concluded that Petitioner had sexual contact with TR.

There was also evidence showing that victim perceived Petitioner's touching to be improper.   She told her mother she had a "secret" to disclose regarding her contact with Petitioner; she told the social worker that she did not like to be touched on her bottom or her "private" like Petitioner had done, (RA 7-10, p. 27); and she told the jury that she did not like it when Petitioner touched her, and it made her feel "bad."   (RA 7-9, pp. 57-58.) Based on this evidence, a rational jury could have inferred that Petitioner touched TR with a sexual intent.   The evidence of Petitioner's previous criminal sexual conduct (discussed above) also supported a finding of sexual intent.

It bears repeating that this Court is not permitted to conduct a de novo review of the evidence, and make a new and independent assessment of Petitioner's guilt or innocence. This Court has not had the benefit of hearing the witnesses's voices, watching their facial expressions, or appraising their demeanors.   Therefore, this Court cannot properly evaluate the credibility of the witnesses who provided the evidence at Petitioner's trial, and this Court cannot second guess the jury's evaluation of those witnesses.   In a habeas corpus proceeding, a federal court can only consider whether the state courts reasonably applied the correct standard of review to a petitioner's insufficiency of the evidence claim.   Here, Petitioner has not shown that it was "objectively unreasonable" for the Minnesota Court of Appeals to conclude that a rational jury could find him guilty based on the evidence

15

presented at his trial.  Therefore, Petitioner's insufficiency of the evidence claim must be denied.

B.  Failure To Disclose Exculpatory Evidence Claim (Ground Two)

Petitioner next claims that his constitutional rights were violated because the prosecution failed to turn over certain exculpatory evidence – namely the Anderson-Hatfield interview – before the start of Petitioner's trial.  Petitioner contends that the late disclosure of that interview deprived him of his constitutional right to due process, as expounded in Brady v. Maryland and its progeny.

In Brady, the Supreme Court held that prosecutors are constitutionally obligated to disclose exculpatory evidence to criminal defendants.  To prevail on a Brady duty-to-disclose claim, a defendant must first identify some specific evidence that was available to the prosecution before his trial, but did not become known to him until after the trial.  United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996).  The defendant must also show that the undisclosed evidence is "material," which means he must show that there is a "reasonable probability" that the outcome of the trial would have been different, if the exculpatory evidence in question had been disclosed to the defense before or during the trial.  Kyles v. Whitley, 514 U.S. 419, 434 (1995), citing United States v. Bagley, 473 U.S. 667, 678 (1985).  In Strickler v. Greene, 527 U.S. 263, 281-82 (1999), the Supreme Court summarized the requirements for a Brady claim as follows:

> "There are three components of a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

In this case, the Minnesota Court of Appeals correctly recognized the three fundamental elements of a Brady claim.  The Court explained that in order to succeed on a Brady claim, Petitioner would have to "show that the evidence at issue (1) is favorable to him because it is exculpatory or impeaching, (2) was inadvertently or willfully suppressed by the state, and (3) resulted in prejudice."  Wehmeyer, 2009 WL 4573685 at *6, citing Strickler, supra.  This explication of the applicable federal constitutional law is wholly consistent with the Supreme Court's decisions on the Brady disclosure requirements.

The State Court of Appeals tacitly adopted the trial court's determination that the Anderson-Hatfield interview was exculpatory and could have been used for impeachment purposes, because Hatfield "stated that she did not see [Petitioner] touch T.R. inappropriately."  Wehmeyer, 2009 WL 4573685 at *7.  Also, it is undisputed that the Anderson-Hatfield interview was suppressed, inadvertently, because it was unknown to either the prosecution or the defense until part-way through Petitioner's trial.

However, both the state trial court and the Court of Appeals found that Petitioner could not sustain his Brady claim, because he was unable to satisfy the prejudice requirement.  As explained by the Court of Appeals –

> "[T]he postconviction court determined that [Petitioner] was not prejudiced by the late disclosure because the officer produced... [the Anderson-Hatfield interview] to counsel the same day it was disclosed.  Defense counsel reviewed it and spoke to [Hatfield] that evening.  At the postconviction hearing, defense counsel stated that he was uncertain as to whether [Hatfield] would provide helpful testimony because of her hostility.  Accordingly, he chose not to call her as a witness.  Based on this record, the postconviction court concluded that 'experienced trial counsel chose not to risk [appellant's] defense by calling a hostile witness who might, or might not, testify consistent with her prior statement' and that '[t]he decision not to call [Hatfield] was a strategic decision and was not significantly impacted by the disclosure delay.'  We agree with the postconviction court's determination that appellant was not entitled to relief under Brady."

17

<u>Wehmeyer</u>  2009 WL 4573685 at *7.

The state courts properly emphasized that the exculpatory evidence at issue, (the Anderson-Hatfield interview), was promptly disclosed to Petitioner <u>during the course of his trial</u>.  This is highly significant, because the Eighth Circuit Court of Appeals has repeatedly held that "where disclosure of exculpatory evidence is delayed, but the evidence is nonetheless disclosed during trial, <u>Brady</u> is not violated."  <u>United States v. Gonzales</u>, 90 F.3d 1363, 1369 (8th Cir. 1996), citing <u>United States v. Boykin</u>, 986 F.2d 270, 276, n. 6 (8th Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 888 (1993), and <u>United States v. Manthei</u>, 979 F.2d 124, 127 (8th Cir. 1992).  <u>See</u> <u>also</u> <u>United States v. Greatwalker</u>, 356 F.3d 908, 912 (8th Cir. 2004) (where exculpatory evidence was disclosed at trial, "<u>Brady</u> was not violated"); <u>United States v. Einfeldt</u>, 138 F.3d 373, 377 (8th Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 851 (1998) (same).  Based solely on this clear statement of the law in the Eighth Circuit, Petitioner's current <u>Brady</u> claim is unsustainable, because the exculpatory evidence at issue was fully disclosed to him during his trial.

Furthermore, the state courts correctly pointed out that –

(1) Petitioner's attorney had a sufficient opportunity to review the interview, and consider its significance, while the trial was ongoing.  (The transcript of the interview is only five pages long.)

(2) Petitioner's attorney had an opportunity to talk to Hatfield about the interview while the trial was ongoing.

(3) Hatfield had already been subpoenaed as a potential witness at Petitioner's trial, so it would have been very easy to call her as a witness, and elicit her testimony.

(4) Hatfield's statements to Anderson were not altogether exculpatory, because Hatfield confirmed that TR and Petitioner spent time together in her home, just as TR testified.

(5) Hatfield expressed strong hostility toward Petitioner, and calling her as a witness might easily have done more harm than good for the defense.

(6) After reviewing the Anderson-Hatfield interview, Petitioner's counsel made a well-justified "strategic decision" to not call Hatfield as a witness at Petitioner's trial. Wehmeyer 2009 WL 4573685 at *7.

Based on this list of reasons, the state courts determined that Petitioner was not prejudiced by the late disclosure of the Anderson-Hatfield interview. The reasons cited by the state courts provide ample support for their resolution of the prejudice issue, and their concomitant rejection of Petitioner's Brady claim. In sum, the state courts' adjudication of Petitioner's Brady claim was not objectively unreasonable, and therefore Petitioner cannot be granted a writ of habeas corpus on that claim.

C. Right To Be Present Claim (Ground Three)

In Petitioner's third ground for relief, he claims the trial court did not conduct a formal arraignment, or any other pretrial hearings, and he was therefore deprived of his constitutional right to be present at all critical stages of his criminal case. Respondent contends that Petitioner's "right to be present" claim has been procedurally defaulted, because it was not properly preserved for appellate review in the state courts. Respondent is correct.

In Petitioner's state court appeal, he filed a pro se supplemental brief, which raised several claims that were not included in his attorney's brief. In one of those claims,

19

Petitioner contended that his conviction should be set aside, because there had been no arraignment hearing or other pre-trial hearings, and thus he had not been present at such hearings.[3]   The Minnesota Court of Appeals acknowledged Petitioner's <u>pro</u> <u>se</u> claims, but noted that "[g]enerally, an appellate court will not consider matters not argued to and considered by the district court."   <u>Wehmeyer</u>, 2009 WL 4573685 at *11.   The Court of Appeals then explicitly refused to consider Petitioner's claims regarding the alleged omission of pretrial proceedings and the right to be present, stating that "[b]ecause [Petitioner] did not raise these issues in the district court, we decline to consider them here."   <u>Id</u>.

"A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds."   <u>Clemons v. Luebbers</u>, 381 F.3d 744, 750 (8th Cir. 2004) <u>cert</u>. <u>denied</u>, 546 U.S. 828 (2005).   When a state appellate court has expressly declined to address a particular claim on the merits pursuant to state procedural rules, the claim is considered to be "procedurally defaulted" for federal habeas corpus purposes.   As the Eighth Circuit Court of Appeals explained in <u>Hall v. Delo</u>, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule."   <u>See</u> <u>also</u> <u>McCall</u>, 114 F.3d 754, 757 (8th Cir. 1997) ("a federal court may usually only consider 'those claims which

---

[3]   Petitioner's <u>pro</u> <u>se</u> brief to the Minnesota Court of Appeals is included in the present record at RA 7-2.   The "right to be present" claim is set forth at pp. 9-11 of that brief.

the petitioner has presented to the state courts in accordance with state procedural rules'"), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.), cert. denied, 517 U.S. 1215 (1996); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992) ("[o]rdinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state courts in accordance with state procedural rules").

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995).  In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted.  See Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir.) (successful demonstrations of actual innocence are "rare and limited," because the actual innocence exception is "permitted only for 'truly persuasive demonstrations of actual innocence,' based on reliable new evidence which shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence'"), cert. denied, 546 U.S. 844 (2005) (citations

21

omitted).[4]

The rules governing procedural default have been summarized by the United States

Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state
> court pursuant to an independent and adequate state procedural rule, federal
> habeas review of the claims is barred unless the prisoner can demonstrate
> cause for the default and actual prejudice as a result of the alleged violations
> of federal law, or demonstrate that failure to consider the claims will result in
> a fundamental miscarriage of justice."

Coleman, 501 U.S. at 750.

In this case, the Minnesota Court of Appeals clearly disposed of Petitioner's "right

to be present" claim solely on state procedural grounds – namely because Petitioner had

not adequately raised the claim in the trial court. Based on the State Court's disposition

of Petitioner's "right to be present" claim, this Court finds that the claim has been

procedurally defaulted for federal habeas purposes.

---

[4] The Eighth Circuit has further explained that –

> "The actual innocence exception is concerned with claims of actual, not legal
> innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It
> is evidence of factual innocence coupled with a constitutional violation which
> triggers the actual innocence exception. Indeed, a credible claim of actual
> innocence 'requires [a] petitioner to support his allegation of constitutional
> error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of
> evidence which may establish factual innocence include credible declarations
> of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992),
> trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and
> exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For
purposes of showing actual innocence, "'evidence is new only if it was not available at trial
and could not have been discovered earlier through the exercise of due diligence.'"
Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128
F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

Petitioner apparently believes that he did properly raise his "right to be present" claim in the trial court, and that the claim was adequately preserved for review on appeal.[5] Thus, he seems to think that the Minnesota Court of Appeals erred when it refused to consider his "right to be present" claim on the merits.  However, this Court cannot review and overturn the State Court's application of a state procedural rule.  It is well settled that "[a] federal court may not re-examine a state court's interpretation and application of state law."  Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994).

In Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001), cert. denied, 535 U.S. 935 (2002), the Eighth Circuit held that "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law."  This rule was reiterated in Owsley v. Bowers, 234 F.3d 1055, 1058 (8th Cir. 2000), cert. denied, 534 U.S. 1121 (2002).   In Owsley, a state appellate court had ruled that a claim was not properly raised and preserved for direct appeal.  The Eighth Circuit rejected the suggestion that the state court had erred, explaining that –

> "We are obliged to respect the conclusion of the Missouri Supreme Court here.  A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis."

---

[5]  Petitioner apparently thinks that he adequately presented his "right to be present" claim to the state district court by means of the following brief exchange with the trial judge:

Petitioner:   "I would like to claim violation of my due process under the 6th and 14th amendments.  Also, I have never had an arraignment or omnibus hearing on this matter."

Trial Judge:   "I don't know that that's true, denied."

(RA 7-5, p. 61.)

Id. at 1058.

In May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001), the Eighth Circuit once again rejected a habeas petitioner's challenge to the validity of a state procedural bar, pointing out that "[w]e may not disturb a state court decision interpreting state law on habeas review... and thus we reject [the petitioner's] contention that he did not default his three ineffective assistance of counsel claims."  See also Clemons, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim").  It is therefore clear that this Court cannot review and overturn the Minnesota Court of Appeals' determination that Petitioner's "right to be present" claim was barred by the state's procedural rules.

The only remaining issue to be resolved is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default.  The Court finds that Petitioner is unable to satisfy either the cause and prejudice standard, or the actual innocence standard, with regard to his procedurally defaulted claim.

Petitioner has made no discernible effort to show any legally sufficient cause to excuse his procedural default, and the Court cannot independently identify any such cause. Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to separately consider the prejudice component.  Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same).

24

Petitioner also does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crime for which he was convicted. To qualify for the actual innocence exception, Petitioner would have to present some compelling new evidence, which would conclusively establish that the original verdict simply could not be correct. See n. 4, supra. Petitioner has not presented any clear and convincing proof that, in fact, he did not commit the crime found by the jury. Therefore, Petitioner's procedurally defaulted claims cannot be entertained under the "actual innocence" exception.

Because Petitioner is unable to overcome his procedural default of his "right to be present" claim, that claim cannot be considered on the merits in the present habeas corpus proceeding. Instead, the claim must be summarily denied.[6]

---

[6] Although Petitioner's "right to be present" claim cannot be adjudicated on the merits for the reasons discussed in the text, the Court notes that this claim appears to be unsustainable in any event. It is certainly true that a criminal defendant has a right to be present at critical court proceedings in his case. See Kentucky v. Stincer, 482 U.S. 730, 745 (1987) ("a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). In this case, however, it appears that Petitioner is not actually contending that he was excluded from any critical hearing; but rather, he appears to be contending that certain pretrial hearings – in particular an arraignment and an "omnibus hearing" – were never conducted at all.

Assuming that there were, in fact, no pretrial hearings conducted in Petitioner's criminal case, it would not necessarily follow that Petitioner's conviction must be vacated. The Constitution does not expressly mandate that an arraignment or any other specific pretrial proceedings be conducted. The Constitution requires only that a criminal defendant "be informed of the nature and cause of the accusation," (Amendment VI), and that the defendant be afforded due process, (Amendment XIV). The Eighth Circuit Court of Appeals has held that "[a]n arraignment is not required where the defendant has had sufficient notice of the accusation and an adequate opportunity to defend himself at trial." United States v. Cook, 972 F.2d 218, 222 (8th Cir. 1992), 506 U.S. 1068 (1993), citing Garland v. Washington, 232 U.S. 642, 645 (1914). See also United States v. Lalonde, 509 F.3d 750, 758 (6th Cir. 2007) ("[i]n Garland, the Supreme Court held that a lack of a formal

## V.  CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner cannot be granted a writ of habeas corpus on any of claims advanced in his current habeas corpus petition.  His insufficiency of the evidence claim, (Ground One), and his Brady claim, (Ground Two), must be denied, because he is unable to show that state courts' resolution of either of those claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," as required by § 2254(d)(1).  Petitioner's "right to be present" claim, (Ground Three), must be denied because it was procedurally defaulted.  The Court will therefore recommend that Petitioner's habeas corpus petition be denied, and that this action be dismissed with prejudice.

## VI.  CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To

─────────────────────

arraignment does not deprive an accused of any substantial right as long as he has sufficient notice of the accusation and adequate opportunity to defend himself").

In this case, the record shows that Petitioner was apprised of, and was aware of, the criminal charges at issue.  (RA 7-11.)  Furthermore, he was given a full opportunity to contest those charges and defend himself, with the assistance of counsel, at his subsequent jury trial.  Therefore, Petitioner's conviction could not be overturned based on the alleged omission of an arraignment or other pretrial proceedings.  See United States v. Rogers, 73 F.3d 774, 777-78 (8th Cir. 1996) (defendant's rights were satisfied because he received notice of the charges against him, and he had an "ample opportunity to defend himself" during his six-day jury trial).  It follows, a fortiori, that Petitioner could not be granted a writ of habeas corpus on his "right to be present" claim.

make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. Daniel</u>, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here.  Petitioner has not identified, (and the Court cannot independently discern), anything novel, noteworthy or worrisome about this case that warrants appellate review.  It is therefore recommended that Petitioner should <u>not</u> be granted a COA in this matter.

## VII.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be **DENIED**;

2.  This action be **DISMISSED WITH PREJUDICE**; and

3.  Petitioner should **NOT** be granted a Certificate of Appealability.

Dated: August 12, 2011

    _s/ Arthur J. Boylan_____
ARTHUR J. BOYLAN
Chief United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before September 2, 2011.